Tonya Star JONES, Plaintiff,

v.

The WARDEN OF the STATEVILLE CORRECTIONAL CENTER, Defendant.

Anthony JONES, Plaintiff,

v.

CHAIRPERSON OF the COOK COUNTY BOARD OF SUPERVISORS, et al., Defendants.

Tony Star JONES, Plaintiff,

v.

Howard PETERS, III, et al., Defendants.

Tonya Star JONES, Plaintiff,

v.

Warden GODINEZ, Defendant.

Anthony JONES, Plaintiff,

v.

Salvador GODINEZ, et al., Defendants.

Anthony JONES, Plaintiff,

v.

Lawrence I. GENESEN, et al., Defendants.

Anthony JONES, Plaintiff,

v.

Howard PETERS, III, et al., Defendants.

Tonya Star JONES, Plaintiff,

v.

Sgt. WARE, et al., Defendants.

Tonya Star JONES, Plaintiff,

v.

CANTEEN FOOD SERVICE, et al., Defendants.

Tonya Star JONES, Plaintiff,

v.

Asst. Warden Edna R. LEE, Defendant.

Tasha Star JONES, Plaintiff,

v.

Lt. NANCE, et al., Defendants.

Tonya Star JONES, Plaintiff,

v.

Lt. BURKE, et al., Defendants.

Tonya Star JONES, Plaintiff,

v.

Lt. D. JOHNSON, et al., Defendants.

Tonya Star JONES, Plaintiff,

v.

Gov. Jim EDGAR, et al., Defendants.

Tonya Star JONES, Plaintiff,

v.

Lester HOLT, et al., Defendants.

Tonya Star JONES, Plaintiff,

v.

Gerry HARPER, et al., Defendants.

Toni Star JONES, Plaintiff,

v.

Thomas F. PAGE, et al., Defendants.

Nos. 92 C 5381, 92 C 5551, 92 C 5656, 92 C 7407, 93 C 0069, 93 C 1443, 93 C 2725, 93 C 3001, 93 C 3750, 93 C 5474, 93 C 5707, 93 C 5708, 94 C 4018, 94 C 5270, 95 C 3405 and 95 C 5245.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 22, 1995.

1144

Jones, Menard Correctional Center, Menard, IL, Pro Se.

Because this is a motion to proceed in forma pauperis, there is no attorney of record for any of the defendants.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Anthony Jones, who sometimes refers to himself as Tonya or Tasha Star Jones, is an Illinois inmate with a penchant for lingerie and litigation. The former has gotten him into trouble with a few of his fellow prisoners. The latter has been troublesome to the courts. In this opinion we review seventeen of the more than one hundred suits that Jones has filed in federal court over the last eight years in order to determine if they have sufficient merit to warrant filing without prepayment of the filing fee. Finding that Jones has stepped over the line of reasonable conduct in his litigation activities, we also consider what sanctions are appropriate to curb abuse of the judicial process by a nearly penniless inmate.

Each of the seventeen complaints before the court seeks relief under 42 U.S.C. § 1983. Each also is presented for filing in forma pauperis under 28 U.S.C. § 1915(a). We consolidate the actions for the sole purpose of ruling on the motions for leave to proceed in forma pauperis under § 1915(a). That statute allows a plaintiff to commence suit without prepayment of fees or costs if, by affidavit, plaintiff can show that he does not have the necessary funds. The purpose of the statute is "to ensure that indigent litigants have meaningful access to the courts." *Neitzke v. Lawrence*, 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). Not all of Jones' motions for leave to file in forma pauperis are on the form that this Court requires its litigants to use. *See* Northern District of Illinois General Rule 11(B)(b). Nonetheless, the motions he has tendered on the required form clearly demonstrate a lack of financial resources to pay even a part of the filing fee. The financial affidavit accompanying his most recent complaint indicates he has a current balance of $14 in his prison trust account. Jones, who generally receives less than $10 a month from the prison and highly sporadic small gifts from individuals outside the prison, rarely accumulates any significant savings. Truly a pauper, Jones is entitled to proceed with his cases as an indigent.

■ Congress, however, did not intend that indigents have wholly unobstructed access to the courts. As a price for waiver of the fees and costs of a lawsuit, a party seeking leave to proceed in forma pauperis must also surmount a substantive hurdle. Under 28 U.S.C. § 1915(d), the court may dismiss the claim of an indigent litigant if "satisfied that the action is frivolous or malicious." In this Circuit, the merits of the suit are also subject to review under § 1915(a). *See Wartman v. Branch 7, Civil Division, County Court*, 510 F.2d 130, 132 (7th Cir.1975). Thus, if the court finds the complaint to be frivolous, it may both deny plaintiff's motion for leave to file in forma pauperis and dismiss the case. *Smith–Bey v. Hospital Administrator*, 841 F.2d 751, 757 (7th Cir.1988). A complaint is frivolous within the meaning of 28 U.S.C. § 1915(d) if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. at 325, 109 S.Ct. at 1831–32. Eight of the complaints before us are facially without any arguable legal merit. We dismiss each of them as frivolous.

## 92 C 7407

■ In this case, Jones sues for the right of access to bras and panties. He alleges female prisoners in Illinois have the right to purchase eye shadow, eyeliner, feminine hygiene deodorant, bleaching creme,

hair rollers, lipstick, mascara, nail polish, rouge, panties, bras, and slips. Jones is upset because he does not have the same rights as female inmates. The warden at the Stateville Correctional Center refuses to authorize the purchase of these items for the male prisoners under his control. Jones contends this violates his rights under the First and Fourteenth Amendments. He holds the founding fathers of this country up as his role models because they wore wigs and makeup.

As will become more apparent in our discussion of the cases before us, Jones has several themes which run repeatedly through his many lawsuits. One of those themes is Jones' asserted constitutional right of access to women's makeup and apparel. This court has once before rejected as frivolous Jones' claim that he had a constitutional right to purchase and wear women's panties and lipstick. *Jones v. Edgar*, 92 C 2581 (N.D.Ill. June 18, 1992). This court, however, is not the only one to consider Jones' claim that he has a right to purchase female attire. Judge Michael M. Mihm of the Central District of Illinois fully analyzed the merits of such a claim in a similar suit that Jones brought against officials at the Pontiac Correctional Center. *Jones v. Gramley*, 815 F.Supp. 276 (C.D.Ill.1993).[1] The court need not elaborate any further on its earlier decision or Judge Mihm's thorough opinion. Neither the Equal Protection Clause nor the First Amendment arguably accord Jones the right of access to women's clothing while confined in a state prison. The complaint in 92 C 7404 is dismissed as frivolous. Plaintiff's motion to amend his complaint in 93 C 69, which again asserts the right to wear women's panties, is also denied.

**92 C 5381**

Another theme that runs through many of Jones' complaints is his need for protection from other inmates. In this action, Jones sues former Stateville Correctional Center Warden Salvador Godinez. He charges defendant with failing to provide him adequate protection from physical abuse at Stateville, a maximum security facility housing aggressive inmates. Jones avers that he faces daily sexual harassment from fellow prisoners because he is an effeminate homosexual or, as he refers to himself, "drag queen." He maintains defendant has not adequately addressed Jones' security problem because he has allowed Jones to be placed in cells with aggressive and/or "straight" males rather than other "effeminate" homosexuals.

Jones has already litigated and lost a similar claim against Godinez. *Jones v. Godinez*, 92 C 8026, 1995 WL 66379, 1995 U.S.Dist. LEXIS 1728 (N.D.Ill. Feb. 13, 1995), *aff'd without published decision*, 65 F.3d 170 (7th Cir.1995). In 92 C 8026, Jones sued Godinez for failing to protect him from allegedly being raped by a gang member on July 9, 1992. He contended that the decision to put him in a cell with a gang member constituted deliberate indifference to his safety because defendant should have known that all gang members could be a threat to the safety of an effeminate homosexual drag queen. The court granted summary judgment for Godinez on several grounds. First, Jones failed to show that Godinez had any personal involvement in the decision to place him in the cell where the rape took place. *Id.* at *3, 1995 U.S.Dist. LEXIS at *7. The court also rejected Jones' argument that Godinez, as warden, should have known of the danger to Jones simply because Stateville is notorious for gangbangers sexually assaulting drag queens and effeminate homosexuals. This

---

1. Jones suit before Judge Mihm gained him some notoriety. The "That's Outrageous" column of a *popular magazine contains the following quote* attributed to Rob Karwath of the Chicago *Tribune:*

> Anthony Jones is suing the state of Illinois for, among other things, not letting him wear a bra, panties, and mascara at the Pontiac Correctional Center, where he is serving 80 years for murdering his great-grandmother. "I have every right in the world to wear a dress," Jones, 30, wrote in his lawsuit, filed under the name he prefers, Tonya Star Jones.
>
> Jones's suit is a classic example of a growing problem facing the state, and, ultimately, taxpayers. Prisoner lawsuits—many of which are frivolous—have tripled in Illinois over the past decade and cost the state millions of dollars each year.

*Readers Digest*, p. 13 (January 1993).

argument failed because Jones did not present any evidence to show that Godinez was aware of the particular danger Jones faced. *Id.* at *3, 1995 U.S.Dist. LEXIS at *8. Jones accepted his cell assignment with nary a peep to anyone. Furthermore, he admitted that he had never complained to Godinez about the dangers he allegedly faced from his cell mate or any other purported gang member. Finally, the court rejected Jones' theory that Godinez was liable for failure to establish a policy to cope with the general danger of putting homosexuals in cells with gang members. *Id.* at *3–*4, 1995 U.S.Dist. LEXIS at *9. Evidence showed that Jones was placed in a special unit used to evaluate the requirements of inmates who had special security needs. Jones could thus prevail only if Godinez had a constitutional duty to train officers never to place gang members in cells with homosexuals. The court declined to impose such a duty on Godinez for "[s]urely not every gang member poses a threat to homosexuals, and in a maximum security prison there are probably many nonmembers who do pose such a threat." *Id.*

■ The doctrine of res judicata, or claim preclusion, bars a plaintiff from suing the same defendant in a second suit involving the same cause of action when a court of competent jurisdiction has entered a judgment on the merits in the earlier action. *See Brzostowski v. Laidlaw Waste Systems, Inc.,* 49 F.3d 337, 338 (7th Cir.1995); *Church of the New Song v. Establishment of Religion,* 620 F.2d 648, 652 (7th Cir.1980), *cert. denied,* 450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1981). All the necessary elements required for claim preclusion are present here. Jones in this case sues the exact same party that he sued in 92 C 8026. This court dismissed that action on the merits. Finally, the claim asserted here arises out of the same core of operative facts put in issue in 92 C 8026. Although Jones does not allege a rape here, the rape at issue in the earlier case had already taken place when Jones tendered this action to the court for filing. Moreover, the broad allegations that Godinez has not provided Jones with adequate protection due to his failure to segregate effeminate homo-sexuals from aggressive "straight" males was fully addressed and rejected in 92 C 8026. Having lost once, Jones cannot relitigate his claim against Godinez again in this case. Accordingly, the court denies Jones' motion for leave to file this action in forma pauperis.

### 93 C 5474

■ In 93 C 5474, Jones again charges defendants with failing to protect him from inmate assault. He maintains officers at the Joliet Correctional Center put an inmate with a history of sexual assaults into his disciplinary segregation cell even though they knew Jones was a drag queen for whom the risk of assault is a serious problem of substantial significance.

As evidenced by 92 C 5381, Jones has a nasty habit of filing multiple suits raising the same claims against the same defendants. *See also Jones v. Edgar,* 92 C 4700 (N.D.Ill. Aug. 14, 1992) (dismissing suit without prejudice because complaint reiterated claim raised in another pending suit). The failure-to-protect claim asserted here also found its way into 93 C 5708. The three correctional guards named as defendants in this case are defendants in 93 C 5708. Unlike the complaint in 92 C 5381, the complaint in this case duplicates a pending rather than previously dismissed lawsuit. Nonetheless, the court knows of no reason why Jones should be allowed to proceed on one claim in two cases. Interests in "wise judicial administration" permit dismissal of a federal suit that parallels another action pending in federal court. *Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir.1993). Accordingly, the court denies Jones motion for leave to proceed in forma pauperis and dismisses this action as duplicative without prejudice to Jones right to pursue his claims in 93 C 5708 should he elect to proceed with that case within the limits imposed by this order.

### 94 C 5270

■ A local television network decided to do a piece on prison litigation on one of its news programs. Not surprisingly, research on the matter surfaced the name of Tonya Star Jones and he was asked to give an

interview. The interview apparently did not go well. Jones alleges that he agreed to do the interview only on the condition that the reporters not mention any of his lawsuits. Jones was more interested in discussing the problem of gangbanging in this country than talking about prisoner litigation. When the piece aired on television, however, Jones discovered that the reporters broke their alleged promise to him. They not only informed their viewers that Jones had several § 1983 suits pending in the court, but also flashed Jones' picture on the screen as they related that other inmates had raped Jones on two occasions. Jones maintains that the broadcast violated his right of privacy under the Fourth Amendment. He brings this action seeking damages to vindicate his rights.

■■■ An essential element of a § 1983 suit is a showing that defendants acted under color of state law when they violated plaintiff's rights. *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir.1992), *cert. denied*, 508 U.S. 940, 113 S.Ct. 2417, 124 L.Ed.2d 639 (1993); *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir.1989). Plaintiff has no grounds for a § 1983 suit against the defendant news reporters because they are private parties. If Jones has any grounds to sue them, he would have to do so in state court. Although a federal court may exercise its diversity jurisdiction over state law claims, the burden of establishing the necessary elements for diversity jurisdiction rests with plaintiff. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995). Jones, who gives an Illinois address for all defendants in this case, does not meet that burden here. The court therefore is without jurisdiction to consider Jones' claims against the television personalities he names as defendants.

For good measure, Jones added a claim that three unknown Joliet prison officials tampered with his mail. Although Jones attested on the face of the complaint that he had never filed any related claims in federal court, the very same mail tampering claim had, in fact, already been raised in *Jones v.*

*Edgar*, 94 C 4018. Because the claim alleged here arises out of the same facts as the mail tampering charges earlier asserted in 94 C 4018, the court dismisses it from this action without prejudice. Jones may pursue his claim in his earlier lawsuit if he desires, subject to the restrictions set forth in this order.

**93 C 3750**

■■■ While returning from a deposition in one of his cases, Jones spotted an assistant warden and greeted her with a "Hi Edna." Edna was not pleased with Jones' familiarity and told an officer to escort Jones to disciplinary segregation. The next day, Jones dashed off and sent to court a complaint alleging the assistant warden violated his right to due process when she had him removed to segregation without a prior hearing.

Until recently, Jones' claim that he was removed to disciplinary segregation in advance of any hearing would have been analyzed under *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). *Hewitt* held that an inmate has no inherent constitutional right to avoid placement in administrative segregation pending an investigation or further review of disciplinary charges because "[a]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Id.* at 468, 103 S.Ct. at 870. Nonetheless, the Court held out the possibility that an inmate could raise a cognizable claim for relief if the regulations governing assignment to investigative segregation were so worded as to create a liberty interest that would trigger a constitutional violation, that is, if the regulation gave the inmate a legitimate expectation that he would not be removed to administrative segregation absent the presence of certain specified criteria. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460–62, 109 S.Ct. 1904, 1908–10, 104 L.Ed.2d 506 (1989). Following *Hewitt*, courts that have reviewed the language of the relevant administrative regulations governing removal of Illinois inmates to administrative segregation generally had not found them sufficient to create a protectible liberty interest. *See Pardo v. Hosier*,

946 F.2d 1278, 1283–84 (7th Cir.1991); *Woods v. Thieret,* 903 F.2d 1080, 1083 (7th Cir.1990); *Geder v. Godinez,* 875 F.Supp. 1334, 1340 (N.D.Ill.1995).

The approach dictated by *Hewitt,* however, no longer controls. In *Sandin v. Conner,* — U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Court explicitly rejected the *Hewitt* methodology of searching for liberty interests in the linguistic structure of particular regulations.

> ... we believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly decided in *Wolff* [*v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)] and *Meachum* [*v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)]. Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at ——, 115 S.Ct. at 2300. The only hardship Jones alleges in this case is a day in segregation. Although the limitations an Illinois inmate experiences as a result of administrative segregation may be substantial, they do not amount to the type of "atypical and significant hardship" needed to give rise to a liberty interest under *Sandin. Leslie v. Doyle,* 896 F.Supp. 771, 773 n. 4 (N.D.Ill. 1995); *see Oswalt v. Godinez,* 894 F.Supp. 1181, 1186 (N.D.Ill.1995) *cf. Williams v. Ramos,* 71 F.3d 1246, 1249–50 (7th Cir.1995) (allegations of unauthorized confinement in disciplinary segregation for 19 days do not state claim under *Sandin* ). Consequently, Jones' allegation that defendant arbitrarily had him removed to segregation without a prior hearing does not give rise to an argua-

ble due process claim. The court denies Jones' motion for leave to file this case in forma pauperis.

### 92 C 5551, 93 C 1420, and 95 C 3405

 Three of Jones' lawsuits raise allegations relating to his 1986 arrest, his treatment following that arrest, and the proceedings that lead to his murder conviction. Like the asserted right to buy and wear female garments, claims arising out of the events that culminated in Jones' conviction are recurrent themes in a number of Jones' suits. *See* Appendix. Jones, however, repeatedly refuses to acknowledge that he has filed prior suits relating to his arrest and conviction. The face of the § 1983 complaint form used in this district asks the plaintiff whether any prior lawsuits "deal with the same facts involved in this action or otherwise relate to your claim?" In two of the three complaints here, Jones' wholly denies filing any related lawsuits.

In 92 C 5551, Jones sues the Chairman of the Cook County Board of Supervisors and the Cook County Clerk. Why he has selected these particular individuals as defendants is unclear for the allegations in the complaint do not in any way involve them. Jones alleges Chicago police arrested him on September 22, 1986 and took him to Cermak Memorial Hospital where he was strapped spread-eagle to a bed and forced to take psychotropic medication without his consent. He asserts he was left tied naked to the bed for nine days. Jones further notes that a psychiatrist testified at his trial that Jones was sane at the time of his arrest.

In 93 C 1420, Jones sues a judge and two public defenders for damages. He maintains the three engaged in a conspiracy to convict him. Jones informs the court in the body of his complaint that he is not suing for freedom in this suit so as to distinguish the case from the habeas corpus petitions he has filed with the court. His aim here is damages rather than release from confinement.

In 95 C 3405, Jones brings suit against four Chicago police officers who allegedly used excessive force against him in effectuating his September 22, 1986 arrest. Jones maintains they transported him to the Jack-

son Park and Cermak Hospitals where medical personnel forcibly injected him with psychotropic medication.[2] In this more recent complaint, Jones admits to having filed a prior case that relates to this one, 92 C 927. Judge Brian Barnett Duff dismissed that suit as frivolous on several grounds. *Jones v. Chicago Police Dept.*, 1993 WL 346224, 1993 U.S.Dist. LEXIS 12465 (N.D.Ill. Sept. 8, 1993), *summarily aff'd*, No. 93–3415 (7th Cir. Feb. 23, 1994). Some of the claims were dismissed on grounds of claim preclusion because they duplicated claims raised and dismissed in six prior cases. Other claims were dismissed because they were barred by the statute of limitations and the qualified immunity defense.

■■■■■ Dismissal of an action as frivolous under § 1915(d) is given preclusive effect as against claims raised in subsequent complaints presented for filing in forma pauperis. *Hudson v. Hedge*, 27 F.3d 274, 276 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 641, 130 L.Ed.2d 547 (1994); *see Besecker v. Illinois*, 14 F.3d 309, 310 (7th Cir. 1994). Once a claim is dismissed on the merits, plaintiff cannot just turn around and launch another complaint asserting the same claim against the same defendants, or their privies, in the remote hope that he might fare better the second time around. Litigation is expensive and the courts must carefully manage their limited resources. A complaint that seeks to relitigate previously dismissed claims is frivolous within the meaning of § 1915(d). *See Cooper v. Delo*, 997 F.2d 376, 377 (8th Cir.1993); *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir.1993); *Crisafi v. Holland*, 655 F.2d 1305, 1309 (D.C.Cir.1981); *Phillips v. Carey*, 638 F.2d 207, 209 (10th Cir.), *cert. denied*, 450 U.S. 985, 101 S.Ct. 1524, 67 L.Ed.2d 821 (1981).

The claims asserted in 92 C 5551, 93 C 1420, and 95 C 3405 merely rehash claims

already decided adversely to plaintiff in numerous prior cases. In his order dismissing 92 C 927, Judge Duff cited five prior cases that Jones had brought against the Chicago police, *Jones*, 1993 WL 346224 at *2, 1993 U.S.Dist. LEXIS at *4, and six prior cases against the judge and public defenders involved in his trial. *Id.* at *2, 1993 U.S.Dist. LEXIS at *7. We will not indulge Jones any further and summarily dismiss these actions as without arguable legal merit.

■■■■■ The complaints in these three cases are more than just frivolous. They represent a malicious and unconscionable abuse of the court. Not only has Jones barraged the court with repetitive lawsuits of absolutely no legal merit, he has attempted to disguise his misconduct by failing to respond fully and truthfully to the questions regarding prior related lawsuits on the complaint form that prisoners in this district are required to use when suing under § 1983. This is not the first time that a court has called Jones to task for not fully disclosing earlier related litigation on the complaint form. In *Jones v. Edgar*, 92 C 2947 (N.D.Ill. June 1, 1992), Judge Paul E. Plunkett ordered Jones "to disclose and list all related cases in any future complaint that he submits for filing in this district, and warned that if Jones continued to abuse the court with repetitive complaints and wholly frivolous claims, the court may find it necessary to impose sanctions or limit his right to file any more cases with the court. *See In re McDonald*, 489 U.S. 180, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989); *Cheek v. Doe*, 828 F.2d 395 (7th Cir.), *cert. denied*, 484 U.S. 955, 108 S.Ct. 349, 98 L.Ed.2d 374 (1987)." Judge Wayne R. Andersen sounded a similar warning in *Jones v. Illinois Legislature*, 93 C 3145 (N.D.Ill. June 10, 1993), when he told Jones that "failure to answer the questions on the complaint form truthfully and list all related cases will be grounds for summary dismissal of any future suits

---

**2.** Forced administration of psychotropic medication is another theme that appears in a number of Jones' complaints. He obtained a rare success on this issue in *Jones v. Flannigan*, 949 F.2d 398 (7th Cir.1991) (unpublished order) when the Seventh Circuit reversed and remanded a case for further proceedings in light of the then recent decision in *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). The victory was Pyrrhic, however, for Jones eventually lost on the merits. *Jones v. Flannigan*, 14 F.3d 604 (7th Cir.1994) (unpublished order). Although the holdings in that and other cases should have alerted Jones that his claim lacks any arguable legal merit, he continues to raise the issue in the apparent hope of gaining perhaps another favorable decision from the courts.

involving any matter related to plaintiff's conviction." Jones, however, has elected generally to ignore these warnings.

██ On the occasion when he may refer to a prior related case, as he did on the complaint form in 95 C 3405, the answers he gives are usually incomplete and misleading. In 95 C 3405, for example, Jones identified only one prior related case even though he had previously sought to file six separate complaints in this district regarding the legality of his arrest and the forcible use of psychotropic medication on him following his arrest. As for the case he identifies, 92 C 927, he wholly misrepresents the basis for its dismissal. Jones states that Judge Duff dismissed 92 C 927 because Jones did not know the name of the defendants when in fact the case was dismissed because it duplicated previously dismissed cases, was untimely, and asserted a claim barred by the qualified immunity doctrine. Jones was placed on notice of the importance of disclosing all prior related cases and the consequences for failing to do so. His continued practice of giving false or incomplete answers in the face of the court's prior orders and admonitions supports a finding of bad faith or malice on his part. See Walton v. Fairman, 836 F.Supp. 511, 515 (N.D.Ill.1993). The knowing failure of a pro se litigant to admit to the filing of prior related complaints in answer to the questions on the civil rights complaint form is conduct subject to sanctions by the court. See Warren v. Guelker, 29 F.3d 1386 (9th Cir.1994). The court can no longer afford to indulge Jones. The time for warnings is past. Sanctions must be imposed to limit Jones' vexatious litigation.

## REMAINING COMPLAINTS

An appropriate sanction to curb Jones' abusive practices cannot be fashioned without first identifying the abuses. Repetitive filing of frivolous actions is but one facet of Jones' misuse of the courts. Another is his repeated failure to comply with the rules and practices governing the form in which he presents his complaints for filing.

Although the court in this order summarily dismisses eight of Jones' complaints as frivolous under § 1915(d), nine of his complaints cannot be so easily dispatched. Two of these complaints, 93 C 5708 and 94 C 4018, contain additional allegations that correctional officers are not adequately protecting Jones from fellow inmates; four complaints, 92 C 5656, 93 C 69, 93 C 1443, and 95 C 5245, assert claims of denial of access to the courts; two, 93 C 2725 and 93 C 3001, assert wide-ranging challenges to the conditions of Jones' confinement; and 93 C 5707 alleges that a correctional officer assaulted Jones in retaliation for past lawsuits. Some of these complaints demonstrate Jones' cavalier use of the courts to make outlandish claims and ridiculous requests for relief.[3] Nonetheless, these nine complaints cannot be found to be wholly and irremediably frivolous, that is they may contain at least one claim that, if not of colorable merit on its face, could be molded into an arguable claim if Jones were given an opportunity to file an amended complaint.

In all but two instances, however, Jones could not proceed with his case even if the court were to grant him pauper status. Fed. R.Civ.P. 5(e) requires the clerk to accept and file every paper tendered for the purpose of filing. Enforcement of the rules regarding procedures and form are thus left exclusively to the court. Although Jones' frequent forays in court have acquainted him with the requirement that his complaint and other documents be signed, completed on the proper forms, and accompanied by an application for leave to proceed in forma pauperis and sufficient copies to permit service on defendants should that application be granted, he often omits compliance with one or more of these requirements. For example, Jones presented only an original complaint in the majority of the nine cases that have survived the court's initial substantive review. If, after this order, Jones wants to proceed with any of these cases, he must submit sufficient

---

**3.** For example, in 94 C 4018, another suit alleging lack of proper protection, Jones asks the court "to deport all the gangbangers that are in the F.B.I.'s book 'Terrorists and Thugs' to Malawi and/or Mali Africa, at a one time only cost of $1000.00 a head" and to grant him the right to choose his own cellmate. He also asks for three million dollars in damages, an injunction against the construction of any further prisons, and for an United Nations investigation into ethnic cleansing in the Illinois Department of Corrections.

copies to permit service on the named defendants.[4]

## SANCTIONS

 "The judicial forum is a place in which serious people attend to serious business." *Morris v. Jenkins*, 819 F.2d 678, 682 (7th Cir.1987). By his ongoing advancement of frivolous claims, filing of repetitive complaints, repeated violations of Rule 5, and conduct before this court at trial, Jones has demonstrated his unwillingness or incapacity to respect the sanctity of the judicial forum. Inmates have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494–95, 52 L.Ed.2d 72 (1977). That right is exercised freely as demonstrated by the court's substantial caseload of inmate-generated complaints and petitions. Most inmates limit their filings to one or two cases. Although few prevail, that does not necessarily mean that they do not have legitimate grievances. Not many wrongs are actionable as constitutional torts in federal court. A hallmark of our federal judicial system is a court that is open to all— those who are rich and those who are poor, those with counsel and those who act as their own attorney, those who are free and those who are in prison. To allow filing of complaints by those untutored in the law is one of the prices of maintaining an open and democratic judicial system. *See Del Raine v. Williford*, 32 F.3d 1024, 1048 (7th Cir.1994). Not surprisingly, most of these cases are dismissed as without legal merit. More importantly, a few have prevailed and even resulted in substantial reforms in the correctional system. *See, e.g., Duran v. Sheahan*, 74 C 2949 (Apr. 9, 1982). Vindication of the violation of constitutional rights is one of the most important functions of the federal courts.

 Knowing the potential power of the courts, some inmates become well-versed in the law and file numerous suits on behalf of themselves and other inmates. The right of access to the courts requires the court to tolerate suits from jailhouse attorneys as well as those from the legally unsophisticated inmate. *Johnson v. Avery*, 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969). Litigiousness alone is not a sign of abuse. *See Abdul–Akbar v. Watson*, 901 F.2d 329, 332 (3d Cir.). Some inmates, however, seize on the court's openness and pervert it for purposes that have little do to with obtaining justice. Although the exceptional case, these inmates, by the sheer number of cases they produce, have an outsized impact on the court. The filing excesses of these relatively few inmates interferes with the orderly administration of justice by diverting scarce judicial resources from those cases that are filed by litigants willing to follow court rules and orders and the those meritorious cases that deserve prompt judicial attention. A federal court has both the inherent power and the constitutional obligation to protect its jurisdiction from conduct that impairs its ability to carry out Article III functions. *Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir.1993); *see In re McDonald*, 489 U.S. 180, 184 n. 8, 109 S.Ct. 993, 996 n. 8, 103 L.Ed.2d 158 (1989). Despite warnings that his right of access to the courts would be limited if his abusive practices continued, *Jones v. Edgar*, *supra*, Jones has refused to conform his conduct to acceptable norms. The court therefore finds it necessary to enter an injunction against Jones limiting his right to file further cases in this court.

 The remaining question is to determine what is "the most effective form in which to exercise [the inherent authority to curb abusive practices] in this case, consistent with the Supreme Court's admonition that any sanction imposed by a federal court for the abuse of its processes be tailored to the abuse." *Support Systems International, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir.1995) (citing *In re Anderson*, —— U.S. ——, ——, 114 S.Ct. 1606, 1608, 128 L.Ed.2d 332 (1994) (per curiam) and *Sassower v. Mead Data Central, Inc.*, —— U.S. ——, ——, 114 S.Ct.

---

4. Other examples of Jones' arrogant disregard for the court's orders and procedures are evidenced by his repeated attempts to initiate cases in the wrong venue after being fully apprised of the venue requirements, *see, e.g., Jones v. Shansky*, 92 C 2431 (Apr. 23, 1992), and attempts to file for habeas corpus relief in the Southern District of Illinois, *Jones v. Washington*, 95 C 761–JPG, after his last two attempts in this district were dismissed for abuse of the writ. *Jones v. Washington*, 95 C 4730 (N.D.Ill. Sept. 26, 1995).

2, 3, 126 L.Ed.2d 6 (1994) (per curiam)). In most litigation, courts may control abusive practices by imposing attorneys fees or monetary sanctions, either under Rule 11 or some other relevant provision of the Federal Rules of Civil Procedure or through its inherent powers. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 2135–36, 115 L.Ed.2d 27 (1991). Monetary sanctions, however, are not a meaningful option here. Jones has practically no money. The only way to insure payment of a fine entered as a sanction is to make filing of future cases contingent on payment. *See Mack*, 45 F.3d at 186. But a court cannot impose a fine impossible to pay for that would effectively deprive the litigant of all access to the courts. *See In the Matter of Davis*, 878 F.2d 211, 212 (7th Cir.1989); *Cotner v. Hopkins*, 795 F.2d 900, 903 (10th Cir.1986); *In re Green*, 669 F.2d 779, 786 (D.C.Cir.1981) (per curiam). Jones, who has next to no income, could not realistically be expected to pay a fine of anything more than $10 or $20. While the court reserves the right to consider monetary sanctions as an option for future misconduct, the small fine permissible under the circumstances here is not a sufficient deterrent to rectify the ongoing abuse that Jones has inflicted on the court.

Recognizing the limitations of monetary sanctions as a method for controlling flagrant misuse of the courts by litigants who are without any visible income, the courts increasingly have resorted to imposing injunctions limiting future filings. These injunctions take many forms. One such form is effective in limiting the filings of the obsessive litigant. An obsessive plaintiff concentrates on a particular event or set of individuals. Focusing on a limited set of claims, the obsessive plaintiff uses the lawsuit as a vehicle to vex. *See e.g., Sassower v. American Bar Assoc.*, 33 F.3d 733 (7th Cir.1994). One suit is no sooner dismissed than the obsessive plaintiff files another asserting the identical claim against the same or related defendants. To control the obsessive inmate, the court can use its inherent power to issue an injunction enjoining the plaintiff from relitigating specific claims or claims arising from the same set of circumstances or against specific defendants. *See, e.g., Villar v. Crow-*

*ley Maritime Corp.*, 990 F.2d 1489, 1499 (5th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994).

Jones has exhibited some of the hallmarks of an obsessive plaintiff. As demonstrated by three of the complaints now before the court, he has repeatedly filed complaints against those involved in his arrest and criminal prosecution. Most of his initial litigation raised claims related to these events. These cases largely were dismissed as frivolous. By continuing to challenge his arrest and conviction long after the courts have determined that such suits have no merit, Jones has evidenced his intent to bring suit, at least in part, to vex and harass. But Jones' litigation activities did not stop with suits against those involved in putting him behind bars. Jones soon found that his constitutional rights extended into the prison and began to freely exercise his right to challenge prison conditions. Because Jones has elected to sue on an unbounded array of subjects, a limited injunction such as those imposed to limit the legal activities of obsessive plaintiffs is not a viable alternative here.

From observations gathered from having reviewed the bulk of Jones' complaints and from conducting a trial in which Jones represented himself, the court would describe Jones as a recreational litigant. A recreational litigant is one who engages in litigation as sport and files numerous complaints with little regard for substantive law or court rules. When confronted with the recreational plaintiff, courts, to protect themselves and other litigants, have enjoined the filing of further case without leave of court. To obtain leave of court under these injunctions, the plaintiff must comply with a variety of restrictions prescribed as preconditions to filing. *See, e.g., In re Winslow*, 17 F.3d 314 (10th Cir.1994); *In re Burnley*, 988 F.2d 1 (4th Cir.1992); *Mayfield v. Collins*, 918 F.2d 560 (5th Cir.1990).

*In the Matter of Davis, supra,* outlines the standard procedure used in this district to limit cases from the recreational plaintiff who persistently abuses the court process. Davis had filed thirty-one cases, many of which were repetitive, in the space of three-and-one-half years. To regulate his future filings, the court's Executive Committee en-

tered an order enjoining Davis from filing any further actions without its prior leave. The order also set out special procedures by which Davis was to present his complaints to clerk for review by the Executive Committee. 878 F.2d at 211–12.

The procedure used in *Davis,* while it may cut down on the number of frivolous cases a recreational litigant can file, is flawed in many respects. The Seventh Circuit recently acknowledged one of the flaws in *Mack:*

> The problem with [enjoining further filing without express prior judicial authorization] is that it places on the court, specifically the designated judge, the burden of reading the litigant's requests for authorization to file. It allows the barrage to continue, just with different labels on the filings and perhaps with fewer judges having to read the filings.

45 F.3d at 186. The Executive Committee approach followed by *Davis* does not even result in a savings of judicial time. Under this District's General Rule 2.21(D)(1), all suits from a particular inmate challenging conditions of confinement are assigned to a single judge. This rule has the salutary effect of allowing prompt identification of repetitive litigation in a multi-judge district. The *Davis* procedure, however, would require the five judges who comprise the Executive Committee to review the substantive merits of a proposed complaint instead of the single judge who ordinarily would be assigned to the inmate's cases. The purpose of any injunction should be to reduce the burden of vexatious litigants, not spread the wealth around. Because this court already has authority under § 1915(d) to review and summarily dismiss any frivolous or duplicative action, a "leave of court" requirement such as that imposed in *Davis* would serve little purpose here.

Another facet of Jones' behavior makes him an unattractive candidate for the prefiling review type of injunction followed in *Davis.* Jones is an intelligent man who has demonstrated a keen ability to understand legal concepts. Although his early suits were truly frivolous in both the factual and legal sense, the quality of his pleadings has gradually improved. By trial and error, he has learned what types of claims are sufficient to survive preliminary review. An occasional victory is taken as a signal to file more complaints alleging similar claims. Thus, the court cannot always determine whether Jones has an arguable claim from the pleadings alone. Claims of rape and failure to protect from inmate assault are mixed in with requests to wear panties and to investigate ethnic cleansing. Legally frivolous claims are readily dismissed with little expenditure of judicial resources and little drain on the resources of the state. But factually frivolous claims, brought for the purpose of sport and harassment, have a far more deleterious effect on the court and those that are required to defend against them.

In *Jones v. Banks,* 92 C 8335 (N.D.Ill. Aug. 30, 1995), Jones alleged that control officers had deliberately opened his cell in order to facilitate another inmate in assaulting him. After two opinions, *Jones v. Banks,* 892 F.Supp. 988 (N.D.Ill.1995) and *Jones v. Banks,* 878 F.Supp. 107 (N.D.Ill.1995), the case went to trial. Because the legal issues were defined by the court's prior decisions and the factual issues were not complex, Jones went to trial before a jury acting as his own attorney.[5] Jones has an innate sense of drama that serves him well as a trial attorney. Unfortunately, he does not have a corresponding appreciation for a lawyer's ethical obligations to be truthful and to present witnesses whose testimony is truthful. Having presided over the trial of this case, the court cannot help but conclude that much of the evidence Jones presented was wholly incredible.[6] The jury apparently agreed as it found for defendants without much deliberation. Trials are expensive and time-consuming. Jones has needlessly squandered too much of the court's time with litigation that is either without legal merit or lacks any reasonable

---

**5.** Not surprisingly, Jones acted as his own defense counsel in his criminal trial. More recently he has sought habeas corpus relief on the grounds that he was convicted as a result of his stand-by counsel's unsolicited participation. *See*

*Jones v. Washington, supra; Jones v. Peters,* 94 C 5466, 1995 WL 387805 (N.D.Ill. June 28, 1995).

**6.** *Jones v. Banks* is not the only case in which later factual development of the record showed

foundation in fact. Prefiling review restraints are not enough to deter abuse from a litigant more intent on creating drama than getting at the truth.

Another solution that a few courts have used to deter abusive recreational inmate filers is to enter an injunction limiting the number of cases the prisoner can file in a given period of time. *See, e.g., In re Tyler,* 839 F.2d 1290 (8th Cir.1988), *affirming,* 677 F.Supp. 1410 (D.Neb.1987) (limiting inmate to nor more than one filing per month); *Cello–Whitney v. Hoover,* 769 F.Supp. 1155 (W.D.Wash.1991) (limiting inmate to three in forma pauperis application per year); *Rubins v. Roetker,* 737 F.Supp. 1140 (D.Colo. 1990), *aff'd,* 936 F.2d 583 (10th Cir.1991) (limiting plaintiff to one action per year unless he claims immediate physical harm). The court finds several persuasive reasons to recommend this option as an adequate solution to the problems presented by Jones. One is its ease of enforcement. Unlike the injunction in *Davis,* the court need not concoct any sort of special docketing procedures to ensure that the case is presented to the judge or judges responsible for determining if it is appropriate for filing. More importantly, however, it puts full responsibility for assessing the relative merits of the case where it belongs, on the plaintiff rather than the court. Jones himself should be required to make the initial determination as to whether his claim is important enough to warrant filing with the federal court.

The cost of litigation itself is sufficiently prohibitive to deter most individuals from using the courts to file frivolous lawsuits. Litigants like Jones, however, "have a greater capacity than most to disrupt the fair allocation of judicial resources because they are not subject to financial considerations— filing fees and attorney's fees—that deter other litigants from filing frivolous petitions." *In re Sindram,* 498 U.S. 177, 180, 111 S.Ct. 596, 597, 112 L.Ed.2d 599 (1991). If engaging in litigation is a pleasurable sport with no costs, then the chronic recreational litigant has no incentive to restrict his abusive behavior. One way to restore the balance and require the inmate to face the decisions made by potential plaintiffs in the free world is to make the filing of a lawsuit a scarce commodity. A scarce commodity is a thing of value that the holder is much less likely to abuse or waste on fruitless activity. Consequently, to ensure that Jones values his right of future access to the courts, the court will enjoin him from filing any more than three in forma pauperis suits per calendar year.

The court is aware that the limit it imposes is somewhat arbitrary. Such limitations on the numbers of cases permitted to be filed are not without its critics. *See Procup v. Strickland,* 792 F.2d 1069, 1078–79 (11th Cir. 1986) (Johnson, J, dissenting). It is true that the limit may cause Jones to forego certain claims that have merit simply because he has used his allotted number of filings for the year. Nonetheless, he still retains some access to the courts. After all, few citizens, indeed few inmates, have the means or desire to file three lawsuits in their lifetimes, let alone annually. People forego legitimate claims all the time. They decide it is not worth their while after weighing the potential gain against the strength of the case and the potential cost. Limiting the number of suits Jones can file is the most effective way to force him to engage in the cost-benefit analysis followed by those who do not have unlimited free access to the courts.

the allegations of the complaint to be of dubious character. In *Jones v. Mitchell,* 93 C 405, 1994 WL 517202, U.S.Dist. LEXIS 13247 (N.D.Ill. Sept. 20, 1994), Jones complained that defendants violated his constitutional right to be protected from harm by allowing a big fire to burn outside his cell. In dismissing this claim, the court noted:

> As for the fire, there is considerable doubt as to whether it took place at all. There are no prison records of it, Jones does not remember telling anyone about it, he did not file a grievance about it, and he does not have copies of the letters he allegedly sent to Ramos about it.

It is difficult to believe that a "big fire" could be started by inmates and burn in a prison for two hours, and even more difficult to believe that no records of such an incident would exist. Even though we must draw all reasonable inferences in favor of the party opposing the motion, a mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment. Jones' allegations, unsupported by anything but his own word, fall somewhere close to the scintilla category.

*Id.* at *6, U.S.Dist. LEXIS at *17 (citation omitted).

It is also important to remember why the court has found it necessary to impose the limits it sets. Jones has not just filed dozens of repetitious and frivolous actions, he has repeatedly ignored the court's orders chastising his conduct and warning him of the consequences if he did not reform. Lesser sanctions cannot adequately address the abusive conduct exhibited by Jones. The imposition of numerical limits on an inmate's right to file should, of course, be reserved for extreme circumstances. But, as evidenced by the numerous cases listed in the appendix and the chronicle of abuses detailed in this order. Jones is that exceptional case.

In his dissent in *Procup*, Judge Johnson criticized the imposition of numerical limits on filings as an impermissible relinquishment of the court's responsibility to undertake a particularized review of in forma pauperis applications. 792 F.2d at 1078–79. In his view, exercise of discretion accorded under the in forma pauperis statute requires more than "a mere arithmetic counting of filings as determinative of the likely merits of any subsequent claim." *Id.* But as the Supreme Court noted in *Martin v. District of Columbia Court of Appeals*, 506 U.S. 1, 2–4, 113 S.Ct. 397, 398, 121 L.Ed.2d 305 (1992) (per curiam), the court also has a responsibility to allocate its limited resources in a way that promotes the interests of justice. The continued ability of the court to give particularized attention to individual inmate cases is dependent on responsible behavior on the part of those seeking review. To allow recreational litigants license to knowingly ignore rules of practice and to flood the court with frivolous lawsuits alleging factually insupportable claims does not serve the interests of justice. Jones has forfeited his right to particularized review by abusing the privilege accorded him under the in forma pauperis statute. The overarching goal of that statute is "to assure equality of consideration for **all** litigants." *Neitzke*, 490 U.S. at 329, 109 S.Ct. at 1834 (quoting *Coppedge v. United States*, 369 U.S. 438, 447, 82 S.Ct. 917, 922, 8 L.Ed.2d 21 (1962) (emphasis added)). Given the nature of Jones' longstanding abuse of the judicial process, the court concludes that the best and most efficient way of safeguarding the integrity of the courts and

the orderly administration of justice for all litigants while accommodating Jones' constitutional right of access to the courts is to restrict his filings to no more than three cases per year.

Accordingly, in light of this restriction, the court denies Jones' motion for leave to file in forma pauperis in the nine cases that have survived the court's initial substantive review. Dismissal is without prejudice to Jones' right to renew his request for leave to file in forma pauperis in three of those case in accordance with the terms of this order.

## CONCLUSION

In conclusion, the court denies Jones' motions for leave to file in forma pauperis in cases 92 C 5381, 92 C 5551, 92 C 7407, 93 C 1420, 93 C 3750, 93 C 5474, 94 C 5270, and 95 C 3405. These actions are dismissed pursuant to 28 § 1915(d) without prejudice to Jones' right to proceed with the complaint should he choose to pay the $120 filing fee in any of the dismissed cases. *See Billman v. Indiana Dept. of Corrections*, 56 F.3d 785, 787 (7th Cir.1995). Although the order directs dismissal without prejudice, denial of leave to file in forma pauperis under § 1915(d) is an appealable order. *Roberts v. United States District Court*, 339 U.S. 844, 845, 70 S.Ct. 954, 955, 94 L.Ed. 1326 (1950). Accordingly, the clerk shall enter judgment in these cases. Thus, if Jones wishes to appeal any of these cases, he must send the clerk of this court a notice of appeal to be filed in the relevant case within thirty days of the date this order is entered on the docket. In accordance with *Farnum v. United States*, 813 F.2d 114, 116 (7th Cir.1987), Jones is cautioned that the Court of Appeals may impose sanctions under Fed.R.App.P. 38 if it deems his appeal to be frivolous.

The court finds that Jones has repeatedly and flagrantly abused the judicial process by inundating the courts with frivolous and repetitive lawsuits, by deliberately failing to disclose the existence of prior related suits, by filing actions making factual assertions with little or no evidentiary support, and by knowingly ignoring the procedural rules of the court. It further finds that Jones has refused to conform his conduct to accepted norms despite past warnings and that restrictive measures are necessary to ensure

that his abusive litigation practices do not continue. The court therefore orders that:

1. Jones may submit no more than three complaints or petitions for filing in forma pauperis in any one calendar year. The clerk is authorized not to accept any complaints submitted in excess of the limits imposed by this order.[7]

2. Any complaint submitted by Jones shall be signed and accompanied by either a filing fee or an application for leave to file in forma pauperis, which shall be completed on the form required by this District's General Rule 11(B)(b). The in forma pauperis application shall also be signed and include a certificate signed by an authorized correctional official indicating the amount on balance in Jones' prison trust fund account. In addition to the original complaint, which must be completed on the form required this District's General Rule 47, Jones shall provide the clerk with a copy for each defendant he lists in the caption of the complaint and a copy for the use of the court. Any petition for a writ of habeas corpus, which Jones must file on the form required by this District's General Rule 23, must be accompanied by two conformed copies. The clerk is authorized to return without docketing any complaint or petition offered for filing that does not comply with the requirements of this order. The clerk shall note the date of receipt on the back of any returned documents.

3. Jones shall disclose all related state and federal cases, pending or previously dismissed, in every further complaint he tenders for filing in this case. A related case is one that involves the same facts or legal issues as the case submitted for filing or one that names as defendant an individual who is named as defendant in the case submitted for filing. Failure to fully disclose all related cases will result in summary dismissal of the complaint or petition.

The court denies Jones' motions for leave to file in forma pauperis in cases 92 C 5656, 93 C 69, 93 C 1443, 93 C 2725, 93 C 3001, 93 C 5707, 93 C 5708, 94 C 4018, and 95 C 5245. Denial is without prejudice to Jones right to renew his request for leave to proceed in forma pauperis in up to three of the nine cases. Any renewed request for leave to file in forma pauperis shall be filed within thirty days and accompanied with sufficient copies to permit service on the named defendants and a separate affidavit listing all related cases as defined by this order. Jones' motions to amend the complaints in 93 C 1443, 93 C 2725, and 93 C 3001 are granted. If Jones elects to renew his request to proceed in forma pauperis in one of these cases, he may submit an amended complaint in compliance with the terms of this order. Only those claims outlined in the motions to amend may be added to the amended complaints. Jones' election to proceed with three of his remaining nine cases does not effect his right to file three cases during 1996. All other pending motions in these cases are denied.

## APPENDIX

### PARTIAL LIST OF CASES FILED BY ANTHONY JONES IN ILLINOIS FEDERAL DISTRICT COURTS

| CASE | SUMMARY OF CLAIM | DISPOSITION |
| --- | --- | --- |
| 87 C 09474, Jones v. Guch | Threatened by state judge. | IFP denied 12/04/87 |
| 87 C 09658, Jones v. City of Chgo | Police failed to protect mother. | IFP denied 12/16/87 |

7. The court trusts that the placing of limits on Jones' right to file will not be construed as an invitation to correctional officials to disregard Jones' constitutional rights. The court is cognizant that prison life could present special hazards to a professed drag queen. The court retains authority to revisit the limits it sets on Jones' filings in this order should legitimate signs of mistreatment by correctional officials surface in the cases Jones decides to file.

| CASE | SUMMARY OF CLAIM | DISPOSITION |
|------|------------------|-------------|
| 87 C 10072, Jones v. Chgo Police Dept. | Police entered house to arrest w/o warrant or probable cause. | IFP denied 12/16/87 |
| 87 C 10073, Jones v. Genesen | Judge deprived plaintiff of right to use holy bible in defense of criminal charges. | IFP denied 11/30/87 |
| 87 C 10074, Jones v. Genesen | Judge denied plaintiff right to speedy trial. | IFP denied 11/30/87 |
| 88 C 00065, Jones v. Inman | Hit by correctional officer; forced to take medicine. | Transferred to S.D.Ill. 01/12/88 |
| 88 C 00066, Jones v. People of the State of Illinois | Denied a speedy trial. | IFP denied 01/08/88 |
| 88 C 00991, Jones v. US | Seeks release on claim of illegal house arrest. | IFP denied 02/11/88 |
| 90 C 05452, Jones v. Shansky | Refuse to provide treatment needed for sex change operation. | Summary judgment for defendant 2/10/91 |
| 90 C 05664, Jones v. US | Seeks deportation to Africa. | IFP denied 10/25/90 |
| 90 C 05873, Jones v. Uethman | Denied right to wear religious medallion. | Transferred to S.D.Ill. 10/23/90 |
| 90 C 05925, Jones v. Yallaly | Denied medical literature from gay organization. | Transferred to S.D.Ill. 10/23/90 |
| 90 C 06712, Jones v. Ticer | Denial of due process in disciplinary hearing; razor stolen in retaliation for lawsuit. | IFP denied 11/29/90 |
| 90 C 07397, Jones v. US | Denied right to expatriate. | IFP denied 01/15/91 |
| 91 C 00758, Jones v. US | Denied right to expatriate. | IFP denied 02/14/91 |
| 91 C 02652, Jones v. McGinnis | Lack of ventilation caused fire hazard. | IFP denied 05/16/91 |
| 92 C 00343, Jones v. US | Phenological aspect being dominated by religious aspect. | IFP denied 01/27/92 |
| 92 C 00344, Jones v. Flanningan | Bars beaten to annoy inmates; general challenge to conditions at Pontiac. | IFP denied 01/22/92 |
| 92 C 00596, Jones v. US | Challenges conviction. | IFP denied 02/14/92 |
| 92 C 00923, Jones v. Niesen | Denial of competent assistance of counsel by public defender. | IFP denied 02/28/92 |

| CASE | SUMMARY OF CLAIM | DISPOSITION |
|------|------------------|-------------|
| 92 C 00924, Jones v. Genesen | Judicial conflict of interest in plaintiff's criminal case. | IFP denied 02/20/92 |
| 92 C 00925, Jones v. Stone | Ineffective assistance of counsel in post conviction proceeding. | IFP denied 02/20/92 |
| 92 C 00926, Jones v. Thompson | Unfair trial. | IFP denied 02/21/92 |
| 92 C 00927, Jones v. Chgo Police Dept. | Forced to take psychotropic drugs against will following arrest. | *Sua sponte* dismissal 9/15/93 |
| 92 C 01002, Jones v. Beatty | Challenges ruling of district judge in S.D.Ill. | IFP denied 02/20/92 |
| 92 C 01003, Jones v. Daley | Not given attorney for arraignment of indictment hearing. | IFP denied 02/25/92 |
| 92 C 01089, Jones v. Peters | Exposure to second-hand cigarette smoke at Pontiac. | IFP denied 03/17/92 |
| 92 C 01424, Jones v. Genesen | Judge did not give plaintiff fair criminal trial. | IFP denied 03/09/92 |
| 92 C 01425, Jones v. Edgar | Contests denial of conjugal visits and violation of Ill. Clean Air Act. | IFP denied 03/11/92 |
| 92 C 01546, Jones v. Genesen | Unfair trial. | IFP denied 03/30/92 |
| 92 C 01547, Jones v. Daley | Denied right to counsel at arraignment, preliminary hearing and committal hearing. | IFP denied 03/06/92 |
| 92 C 01719, Jones v. Chgo Police Dept. | Pistol whipped by Chicago Police officer. | IFP denied 04/29/92 |
| 92 C 01720, Jones v. *Chicago Sun–Times* Newspaper | Libel action for publishing article stating plaintiff had mental health problems. | IFP denied 03/31/92 |
| 92 C 02191, Jones v. Illinois | Not given counsel at arraignment. | IFP denied 04/15/92 |
| 92 C 02347, Jones v. Chgo Police Dept. | Excessive use of force on arrest; never read rights when put in custody by Chgo Police Dept. | IFP denied 04/15/92 |
| 92 C 02429, Jones v. Peters | Legal mail opened outside presence. | IFP denied 04/23/92 |

| CASE | SUMMARY OF CLAIM | DISPOSITION |
|---|---|---|
| 92 C 02430, Jones v. Edgar | Not given access to parale-gal or law library. | IFP denied 04/23/92 |
| 92 C 02431, Jones v. Shan-sky | Denial of treatment for geni-tal herpes. | IFP denied 04/23/92 |
| 92 C 02432, Jones v. Cook County | Denied fair trial. | IFP denied 04/28/92 |
| 92 C 02433, Jones v. Chgo Police Dept. | Arrested at grandmother's house w/o probable cause or warrant by Chicago Police. | IFP denied 04/29/92 |
| 92 C 02581, Jones v. Edgar | Seeks to enjoin defendants from requiring plaintiff to wear men's clothing. | IFP denied 06/18/92 |
| 92 C 02582, Jones v. Neisen | Betrayed by public defend-er. | IFP denied 04/23/92 |
| 92 C 02652, Jones v. Peters | Challenge to sentence. | IFP denied 05/14/92 |
| 92 C 02813, Jones v. Peters | Mail opened outside pres-ence; IDOC chaplaincy does not provide adequate or equal services to Shiite Mus-lims. | IFP denied 05/18/92 |
| 92 C 02947, Jones v. Edgar | Violation of Ill. Clean Air Act. | IFP denied 06/01/92 |
| 92 C 03064, Jones v. Peters | Judge dismissed suit w/o reasonable notice. | IFP denied 05/18/92 |
| 92 C 04700, Jones v. Edgar | Failure to control gangs. | IFP denied 08/14/92 |
| 92 C 05381, Jones v. Godinez | Failure to protect from sex-ual assault. | |
| 92 C 05551, Jones v. Cook Co. Board of Supervisors | Forcibly given psychotropic medication while at Cook County Jail. | |
| 92 C 05656, Jones v. Peters | Denied access to the courts. | |
| 92 C 05764, Jones v. Chair-person of the Cook Co. Board | Illegally constituted grand jury. | IFP denied 09/30/92 |
| 92 C 07407, Jones v. Godinez | Stateville commissary does not allow inmates to pur-chase women's clothing sold at Dwight Dixon. | |
| 92 C 07843, Jones v. Quinn | Prosecutors violated trial rights. | IFP denied 12/16/92 |
| 92 C 07939, Jones v. Peters (habeas corpus) | Ineffective assistance of counsel. | Dismissed on respondent's motion 03/29/93 |

| CASE | SUMMARY OF CLAIM | DISPOSITION |
|------|------------------|-------------|
| 92 C 08026, Jones v. Godinez | Failure to protect from inmate assault. | Summary judgment for defendants 02/16/95 |
| 92 C 08335, Jones v. Banks | Failure to protect from inmate assault. | Jury verdict for defendants 08/30/95 |
| 93 C 00069, Jones v. Godinez | Officials are withholding transcripts in mail room. | |
| 93 C 00211, Jones v. Peters | Subjected to second hand cigarette smoke; endangering health. | IFP denied 05/19/95 |
| 93 C 00405, Jones v. Mitchell | Failure to protect from inmate threats. | Dismissed for want of prosecution 11/04/93 |
| 93 C 01420, Jones v. Genesen | Conspiracy between judge & public defenders to secure conviction. | |
| 93 C 01443, Jones v. Peters | Conspiracy to transfer to Centralia to block access to the courts. | |
| 93 C 01716, Jones v. Clerk of the 7th Circuit | Clerk in appellate court refuses to accept mail or file papers. | IFP denied 03/29/93 |
| 93 C 02085, Jones v. Peters (habeas corpus) | Ineffective assistance of counsel; double jeopardy. | Petition denied 07/23/93 |
| 93 C 02366, Jones v. Chairperson of the Cook Co. Board | Blacks were underrepresented in jury venire. | IFP denied 09/14/93 |
| 93 C 02414, Jones v. Edgar | Illinois court system unconstitutional. | IFP denied 06/11/93 |
| 93 C 02725, Jones v. Ware | Put in double cell in contravention of prescribed medical need as paranoid schizophrenic; unsanitary showers; officers bang cell bars to harass. | |
| 93 C 02893, Jones v. People of the State of Illinois | Mandamus to compel state to reverse conviction. | IFP denied 08/26/93 |
| 93 C 03001, Jones v. Canteen Food Service | Not allowed enough food; denied panties; exposed to passive smoking; unclean showers. | |
| 93 C 03145, Jones v. Illinois Legislature | Challenges statute underlying conviction. | IFP denied 06/10/93 |
| 93 C 03750, Jones v. Lee | Put in segregation w/o warning. | |

| CASE | SUMMARY OF CLAIM | DISPOSITION |
|------|------------------|-------------|
| 93 C 05474, Jones v. Nance | Failure to protect form inmate assault. | |
| 93 C 05707, Jones v. Burke | Assaulted by guards. | |
| 93 C 05708, Jones v. Johnson | Failure to protect from sexual assault; cell too cold; made to wear leg irons for out of cell movement; no access to law library. | |
| 93 C 06877, Jones v. Chgo Police Officers | Refiling of claims in 92 C 927. | IFP denied 12/17/93 |
| 94 C 00194; Jones v. Coutee | Failure to protect from gangbanger. | IFP denied 07/25/94 |
| 94 C 00401, Jones v. 3 Unknown Named Construction Companies | Suffered from cold cell due to delays in fixing broken window. | IFP denied 05/19/95 |
| 94 C 01578, Jones v. Peters (habeas corpus) | Challenge denial of prior habeas corpus. | Summarily dismissed 03/28/94 |
| 94 C 04018, Jones v. Edgar | Constantly exposed to gangbangers; mail intercepted in retaliation for TV interview. | |
| 94 C 05270, Jones v. Holt | Violation of right of privacy by television newscasters. | |
| 94 C 05466, Jones v. Peters (habeas corpus) | Ineffective assistance of counsel; improper jury instructions; failure to conduct competency hearing. | Dismissed as abuse of the writ 06/26/95 |
| 94 C 05698, Jones v. Clerks of the Circuit Court | Transcripts withheld from appeal. | IFP denied 12/8/94 |
| 94 C 06525, Jones v. Clinton | Federal officials not applying Immigration and Nationality Act to strip gangbangers of citizenship. | IFP denied 11/23/94 |
| 95 C 03405, Jones v. Harper | Excessive use of force on arrest and forced injection of psychotropic drugs. | |
| 95 C 04730, Jones v. Washington (habeas corpus) | Ineffective assistance of counsel; denied right of self representation; judicial misconduct. | Dismissed as abuse of the writ 09/26/95 |
| 95 C 05245, Jones v. Page | Legal papers misdirected in order to deny access to the courts. | |
| 95 C 5802, Jones v. Conlon | Conspiracy to deny habeas corpus without review of transcript. | IFP denied 11/01/95 |

| CASE | SUMMARY OF CLAIM | DISPOSITION |
|------|------------------|-------------|

### SOUTHERN DISTRICT OF ILLINOIS

| CASE | SUMMARY OF CLAIM | DISPOSITION |
|------|------------------|-------------|
| 88–3052, Jones v. Inman | Guard assault. | |
| 88–3573, Jones v. Inman | Guard assault causing paranoid schizophrenic disorder. | |
| 89–3056, Jones v. Flannigan | Denial of treatment for gender dysphoria and involuntary administration of antipsychotic drugs. | |
| 89–3507, Jones v. Flannigan | Verbal harassment because of race and gender preference. | |
| 89–3631, Jones v. Yallaly | One week delay in mailing out legal papers. | |
| 90–3468, Jones v. Baker | Plaintiff sues to renounce his citizenship, claiming he is Shiite Moslem and a follower of the late Ayatollah Khomeini and Libyan leader Moammar Khaddafi. | |
| 90–3579, Jones v. Attorney General | Repeat of 90–3468 against AG as defendant. | |
| 90–3745, Jones v. Yallaly | Warden won't allow plaintiff to receive mail from the Gay and Lesbian Task Force. | |
| 90–3786, Jones v. Uethman | Religious medallion confiscated. | |
| 90–4158, Jones v. Yallaly | Denied right to wear cross-shaped religious medallion. | |
| 92–312, Jones v. Flannigan | Racially discriminatory denial of job as a maintenance worker. | |
| 92–42, Jones v. Williamson | Refiling of 90–3745. Warden won't allow him to receive mail from Gay and Lesbian Task Force; complains of banging on the cell bars. | |
| 92–469, Jones v. Stiehl | Plaintiff claims judge ruled in his case when his cousin was assigned to it. Failed to obtain settlement offered by the state. | |
| 92–71, Jones v. Vallabhaneni | Transferred from Menard to Psych w/o a hearing. | |

1164

| CASE | SUMMARY OF CLAIM | DISPOSITION |
|---|---|---|
| 92–76, Jones v. Flannigan | Complains of banging on cell bars, construction noises. | |
| 92–98, Jones v. Flannigan | Requests for Muslim services have been ignored; not permitted to send legal mail. | |
| 95–224, Jones v. Washington | General challenge to conditions; denial of access to the courts; denial of protective custody; arbitrary transfer and cell assignment. | |
| 95–269, Jones v. Miles | Cigarette manufacturer put harmful additive in tobacco products. | |
| 95–523, Jones v. Washington (habeas corpus) | Challenge to 1987 conviction. | |
| 95–564, Jones v. Page | Failure to protect; denial of medical care. | |
| 95–710, Jones v. Rennison | Denial of access to the courts. | |
| 95–761, Jones v. Washington (habeas corpus) | Challenge to 1987 conviction. | |
| 95–762, Jones v. ? | Denial of due process in disciplinary proceeding. | |

### CENTRAL DISTRICT OF ILLINOIS

| CASE | SUMMARY OF CLAIM | DISPOSITION |
|---|---|---|
| 89–3248, Jones v. Lane | Denial of due process; conditions of confinement violated Eight Amendment; missing personal property. | |
| 91–2232, Jones v. Peters | Failure to evacuate protective custody unit when fire broke out, causing severe trauma. | |
| 92–1028, Jones v. Gramley | ? | |
| 92–1029, Jones v. Gramley | Defendants refused to allow plaintiff to wear women's make-up and apparel. | |
| 92–1154, Jones v. Pool | Correctional officer read diaries, violating right to privacy. | |
| 92–1155, Jones v. Craine | Censorship of legal mail. | |
| 92–1199, Jones v. Dallas | Correctional officers sexually harassed plaintiff; spread | |

| CASE | SUMMARY OF CLAIM | DISPOSITION |
|------|------------------|-------------|
| | rumors that plaintiff is homosexual and promiscuous. | |
| 92–1200, Jones v. Gramley | Denied enrollment in college courses; poor ventilation is housing unit; served wrong food tray. | |
| 92–1208, Jones v. Edgar | Pontiac's segregation unit not provided adequate legal assistance. | |
| 92–1246, Jones v. Leonard | Officer insulted plaintiff; challenge to entire public defender system of Illinois. | |
| 92–1288, Jones v. Hediger | Violations of right to privacy; exposure to second-hand smoke; failure to curtail gang activity; request to take classes have been denied; denied meaningful access to the courts; general population inmates come into contract with protective custody inmates. | |
| 95–1383, Jones v. Gramley | Denial of access to the courts. | |
| 95–1384, Jones v. Castro | Plaintiff housed with inmates who are HIV-positive. | |