934 P.2d 816

Christina ACKER, Petitioner–Appellant,

v.

CSO CHEVIRA, Lt. Barrios, Sgt. Richardson, CPO Jerry Eitniear, A.A. John Hayes, DW Judy Frigo, Samuel Lewis, Director and the State of Arizona, Respondents–Appellees.

No. 1 CA–CV 95–0451.

Court of Appeals of Arizona, Division 1, Department A.

March 20, 1997.

Christina Acker, Goodyear, In Propria Persona, Petitioner-Appellant.

NOYES, Judge.

Christina Acker ("Appellant") appeals from the trial court's sua sponte, pre-service-of-process dismissal of her *in forma pauperis* civil action. Appellant's complaint alleges that prison officials violated their policies and her constitutional rights by denying her any phone contact with members of her family, all of whom reside out of state. Appellant pursued administrative remedies without success, then filed this complaint. Rather than allow the complaint to be served, the trial court dismissed it with this minute entry:

> The Court having received an Application for Deferral/Waiver of Fees, having reviewed the file in this matter, and good cause appearing,

> IT IS ORDERED, on the Court's own motion, dismissing the Complaint pursuant to Rule 12(b)(6), A.R.Civ.P., as the Complaint fails to state a claim upon which relief can be granted.

Appellant filed a notice of appeal. Because no Defendant has been served with the complaint, Appellant is the only party to the appeal. We conclude that the trial court lacked express authority to dismiss the complaint on the stated grounds. We also conclude that the dismissal cannot be affirmed as an exercise of inherent authority because the trial court neither invoked that authority nor made any record to support its use of that authority.

### Express Authority

Appellant is a state-prison inmate who seeks access to the civil courts pursuant to the *in forma pauperis* privilege accorded by Arizona Revised Statutes Annotated ("A.R.S.") sections 12–302 and 306(C) (Supp. 1996). These statutes, with few exceptions (i.e., cases of dissolution of marriage and child support), now hold inmates "responsible for the full payment of actual court costs." A.R.S. § 12–306(C). These costs are assessed against the inmate's prison account until paid in full. *Id.* Twenty percent of all deposits into the inmate's account are withheld to pay outstanding court costs. *Id.* An inmate, however, cannot be denied access to the courts if funds are not immediately available. *Id.; see also* A.R.S. § 12–302(B).

The Arizona legislature has also decreed that *in forma pauperis* inmate-litigants be punished for specified behaviors:

> A prisoner shall forfeit five days of the prisoner's earned release credits if the court finds or a disciplinary hearing held after a review by and recommendations from the attorney general's office determines that a prisoner does any of the following:
> 1. Brings a claim without substantial justification.
> 2. Unreasonably expands or delays a proceeding.
> 3. Testifies falsely or otherwise presents false information or material to the court.
> 4. Submits a claim that is intended solely to harass the party filed against.

A.R.S. § 41–1604.10(E) (Supp.1996) (for felonies committed before January 1, 1994); A.R.S. § 41–1604.07(G) (Supp.1996) (thereafter).

No Arizona statute authorizes the trial court to issue a sua sponte dismissal of an *in forma pauperis* action (or any other action) on grounds that it fails to state a claim upon which relief can be granted. In contrast, we now discuss the federal statutes, which do authorize such dismissals.

"The federal *in forma pauperis* statute, enacted in 1892 and presently codified as 28

U.S.C. § 1915, is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989) (citing *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 342–43, 69 S.Ct. 85, 90–91, 93 L.Ed. 43 (1948)). Prior to 1996, the federal statute permitted sua sponte dismissal of inmate civil litigation only if the allegation of poverty was untrue or if the action was "frivolous or malicious." 28 U.S.C. § 1915(d) (1994). A complaint is "frivolous" where it "lacks an arguable basis either in law or fact." *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831–32. A complaint which fails to state a claim upon which relief may be granted is "not automatically frivolous within the meaning of § 1915(d)." *Id.* at 331, 109 S.Ct. at 1834.

In 1996, Congress amended the federal *in forma pauperis* statute to mandate sua sponte dismissal of an action which fails to state a claim upon which relief may be granted:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
>> (A) the allegation of poverty is untrue; or
>>
>> (B) the action or appeal—
>>
>>> (i) is frivolous or malicious;
>>>
>>> (ii) fails to state a claim on which relief may be granted; or
>>>
>>> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e) (1996). A related federal statute provides:

> (a) Screening.—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A (1996).

A sua sponte dismissal like that ordered by the trial court here is authorized—mandated—by the federal *in forma pauperis* statutes but it is not authorized by the Arizona statutes. Because the trial court derives its authority from Arizona rather than federal statutes, its sua sponte dismissal on the stated grounds was in excess of any express authority and can be affirmed only if it was a proper exercise of inherent authority.

### Inherent Authority

A court's inherent authority "may be defined as such powers as are necessary to the ordinary and efficient exercise of jurisdiction." *State v. Superior Court,* 39 Ariz. 242, 247–48, 5 P.2d 192, 194 (1931) (citation omitted). We recently referred to the trial court's "inherent screening power" and its "inherent power to dismiss facially invalid claims" in post-conviction relief proceedings. *State v. Curtis,* 185 Ariz. 112, 114–15, 912 P.2d 1341, 1343–44 (App.1995) (affirming sua sponte dismissal of a petition for post-conviction relief which contained "obviously precluded" claims). In the *in forma pauperis* context, however, the court's "inherent screening power" has generally not been used to summarily clear the docket of complaints which fail to state a claim upon which relief can be granted; it has generally been used to get control of inmates who have proven themselves to be abusers of the *in forma pauperis* privilege by filing frivolous actions.

Inmates have a constitutional right of access to the courts, *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1492–93, 52 L.Ed.2d 72 (1977), but

> [s]ome inmates ... seize on the court's openness and pervert it for purposes that have little to do with obtaining justice.... The filing excesses of these relatively few inmates interferes with the orderly administration of justice.... A federal court

has both the inherent power and the constitutional obligation to protect its jurisdiction from conduct that impairs its ability to carry out Article III functions.

*Jones v. Warden of Stateville Correctional Center,* 918 F.Supp. 1142, 1152 (N.D.Ill.1995) (citations omitted).

A court's inherent authority is largely unwritten; appellate affirmation of an exercise of that authority ordinarily is grounded on trial court findings and conclusions which explain its actions. In *Jones,* for example, the court made detailed findings to explain its conclusion that the inmate's access to the courts had to be severely curtailed because he had proven himself to be a "recreational litigant" who "repeatedly and flagrantly abused the judicial process by inundating the courts with frivolous and repetitive lawsuits." *Id.* at 1153, 1156. Similarly, the *Curtis* trial court explained that petitioner was precluded from raising claims in a second petition which he had thoroughly litigated in a previous petition. *185 Ariz.* at 114, 912 P.2d at 1343.

■ If only from our own docket, we know that Appellant files many lawsuits. But her other filings are irrelevant here because the dismissal was based only on the complaint in this case—a complaint which the trial court did not find to be frivolous. Because the trial court neither invoked its inherent authority nor made any findings that would justify its use of that authority, the dismissal cannot be affirmed as an exercise of inherent authority.

### Sua Sponte Rule 12(b)(6) Dismissals

In this section, we explain why we discourage sua sponte Rule 12(b)(6) dismissals. As relevant here, Rule 12(b), Arizona Rules of Civil Procedure, provides as follows:

Every defense, in law or in fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

. . . .

6. Failure to state a claim upon which relief can be granted.

. . . .

A motion making any of these defenses shall be made before pleading if a further pleading is permitted. . . . If, on a motion asserting the defense numbered 6 to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

■ We express no opinion on whether Appellant's complaint might survive a Rule 12(b)(6) motion to dismiss after defendants are served with it. The question will then be asked why the trial court should have to allow service of a complaint which appears doomed to dismissal as soon as defendants file a Rule 12(b)(6) motion. We answer that question by first noting that motions to dismiss for failure to state a claim are not favored in Arizona. *Folk v. City of Phoenix,* 27 Ariz.App. 146, 151, 551 P.2d 595, 600 (1976). A court should not grant such a motion unless it appears certain that the plaintiff would not be entitled to relief under any state of facts susceptible of proof under the claim stated. *Id.* (citations omitted). In our review of a motion to dismiss, we must accept all material facts alleged by the non-moving party as true. *Lakin Cattle Co. v. Engelthaler,* 101 Ariz. 282, 284, 419 P.2d 66, 68 (1966) (citations omitted). Before a Rule 12(b)(6) motion to dismiss is granted, the non-moving party should be given an opportunity to amend the complaint if such an amendment will cure its defects. *Sun World Corp. v. Pennysaver, Inc.,* 130 Ariz. 585, 589, 637 P.2d 1088, 1092 (App.1981) (citing *In re Cassidy's Estate,* 77 Ariz. 288, 270 P.2d 1079 (1954)). Because no Arizona case discusses sua sponte Rule 12(b)(6) dismissals, we again look to federal precedent.

Sua sponte dismissals of *in forma pauperis* actions were (until the 1996 amendment of the federal statutes) disapproved in the federal system unless preceded by "proper pro-

cedural steps," which were described as follows:

A district court may dismiss an action on its own motion for failure to state a claim, but only after the court takes the proper procedural steps. The court must permit issuance and service of process as required by Fed.R.Civ.P. 4(a) and the court must notify the plaintiff of the proposed action and afford him an opportunity to submit written argument in opposition. In addition, the court must give a statement of the reasons for the dismissal, and an opportunity to amend unless the complaint is clearly deficient.

*Franklin v. Oregon State Welfare Division* ("*Franklin I*"), 662 F.2d 1337, 1340–41 (9th Cir.1981) (citations omitted); *see also Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) and *Wong v. Bell*, 642 F.2d 359, 361–62 (9th Cir.1981). The rationale for disapproval of sua sponte Rule 12(b)(6) dismissals was that:

[T]he procedure (1) eliminates the traditional adversarial relationship; (2) causes inefficiencies in the judicial process as a whole; and (3) may give the appearance that the judiciary is a proponent rather than an independent entity.

*Franklin I*, 662 F.2d at 1341–42.

Another reason to discourage sua sponte Rule 12(b)(6) dismissals is that any appeal is nonadversarial; the appellant is the only party before us. Such one-party practice "often leads to a shuttling of the lawsuit between the [trial] and appellate courts." *Lewis v. New York*, 547 F.2d 4, 6 (2d Cir.1976).

We do not know how the *Franklin I* principles will be applied in the federal system now that 18 U.S.C. § 1915 *mandates* sua sponte Rule 12(b)(6) dismissals in certain instances, but we find those principles to provide good guidance for *in forma pauperis* statutes such as presently exist in Arizona. We do not hold that an Arizona trial court can never order a sua sponte Rule (12)(b)(6) dismissal. We do hold that, before the trial court orders such a dismissal of an *in forma pauperis* complaint, it should follow the *Franklin I* "proper procedural steps." Likewise, if the trial court, on its own motion, dismisses an *in forma pauperis* action by invoking its inherent authority to dismiss frivolous actions, it should make findings which explain its action.

The judgment of dismissal is reversed and the case is remanded for further proceedings consistent with this opinion.

FIDEL, J., and SKELLY, J., Pro Tempore.†

---

† The Honorable Christopher M. Skelly, Judge Pro Tempore, was assigned by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this matter pursuant to article 6, section 31 of the Arizona Constitution and A.R.S. sections 12–145, –147 (1992).