Progressive Logistics Services, LLP, St. Louis, MO, Appellee
JP Morgan Chase Bank, NA, Dallas, TX, Appellee
Connecticut General Life Insurance Company, Denver, CO, Appellee
Wal-Mart Associates, Inc., Denver, CO, Appellee
Manuel Gallarzo, Phoenix, Appellant
Phyllis Chase, Phoenix, Appellant
Pedro Martinez, Phoenix, Appellant
Kimberlee Sullins, Show Low, Appellant
Gabriela Ramos, Lynwood, CA, Appellant
Nicole Grow, Phoenix, Appellant
Judge Peter B. Swann delivered the opinion of the court, in which Presiding Judge Diane M. Johnsen and Judge Lawrence F. Winthrop joined.
SWANN, Judge:
¶ 1 This consolidated matter arises from the Arizona Department of Economic Security's sustained failure, over a period of years, to perform its obligation under A.R.S. § 41-1993(B) to transmit to this court applications for appeal in disputes regarding claimants' entitlement to government benefits. The Department's unexcused breach of its statutory duty resulted in the delayed resolution of hundreds of applications, including applications concerning substantial benefit overpayments and interest thereon. The parties whose applications were delayed were unjustifiably denied the procedural due process right to timely adjudication of their disputes. In the exercise of our inherent authority, we order that the Department must waive all non-fraud overpayment interest caused by its delay in the consolidated cases. Further, as set forth below, we issue several orders designed to prevent future delays, ensure a complete remedy, and protect the rights of applicants whose colorable claims were delayed.
FACTS AND PROCEDURAL HISTORY
¶ 2 The Department administers various benefit programs under state and federal law, including state unemployment and federal nutritional assistance programs. See A.R.S. §§ 41-1953(E), -1954(A). Disputes arising from claims for benefits under those programs are resolved in multi-stage administrative *553 proceedings, after which an aggrieved party may seek this court's review by filing an application for appeal with the Department. See A.R.S. §§ 41-1991 to -1993. A.R.S. § 41-1993(B) requires the Department to notify this court of the pendency of an application for appeal by transmitting the application and the record. See also A.R.S. § 23-674(A) (obligating Department to transcribe hearing upon party's application for appeal).
¶ 3 Beginning in 2013 the Department failed, for approximately three years and in hundreds of cases, to fulfill its statutory obligation to transmit applications for appeal. In re Arizona Department of Economic Security's Compliance with Administrative Order 2017-01 , 2017 WL 4784584 ¶ 13 (App. 2017). According to the Department, the problem was the result of misconduct by the employee whose job it was to prepare case files and transmit them to this court. Rather than send the files to the court, the employee, who no longer works for the Department, hid them in her workspace at the Department, employing various devices to conceal her malfeasance.
¶ 4 The Department reportedly did not discover and therefore did not begin to remedy the consequences of the employee's misconduct until late 2016,[1] and its initial efforts did not resolve the issue. Accordingly, in February 2017, this court issued an administrative order, A.O. 2017-01, that required the Department to transmit all outstanding applications for appeal within 20 days. The Department's failure to comply with that order led to our decision in In re Arizona Department of Economic Security's Compliance with Administrative Order 2017-01 , wherein we held the Department in contempt and entered orders designed to prevent future delayed transmissions. 1 CA-UB 17-0128, 2017 WL 4784584, at *1, 10-11, ¶¶ 1, 51-53 (Ariz. App. Oct. 24, 2017) (mem. decision). Under those orders, which we repeated in A.O. 2017-03, the Department must transmit all applications for appeal within 30 days, transmit all associated transcripts within 40 days, and file monthly audit and inventory reports. Id. at *10-11, ¶¶ 51-54. Non-compliance carries the risk of additional consequences, including monetary sanctions. Id. at *11, ¶ 53.
¶ 5 All delayed applications-totaling approximately 350-were provided to this court by mid-April 2017. By that time, roughly 200 of the appeal applications had been delayed for at least one year. And of that 200, approximately one-third had been delayed for between two and three years, and one-third for between three and four years.
¶ 6 Delays in resolution of benefit claims can have significant consequences for the applicants. A claimant whose application for benefits is wrongfully denied is deprived of a legal entitlement while the appeal is pending. And in some cases, a claimant is initially granted benefits, for a period of time, but the claim is eventually ruled invalid in the course of administrative review. When that happens, the claimant is required to repay the resulting overpayments, which, depending on the length of the process, may amount to thousands of dollars. Of the 200 appeals applications delayed for two years or more, more than half implicate benefit overpayments, with a quarter of that subset delayed between two and three years and a quarter between three and four years. All delayed overpayment applications (without regard to length of delay) placed roughly $450,000 in principal and more than $62,000 in interest at issue, with only a small fraction of the applications involving suspected or actual fraud by the claimant.
¶ 7 We examine here, in six consolidated cases-all of which involve unemployment benefits and some of which implicate overpayments (none of which were procured by fraud)-whether the Department's failure to timely transmit applications violated the applicants' right to procedural due process. We appointed pro bono counsel to assist our inquiry.
DISCUSSION
¶ 8 "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property'
*554 interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge , 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
¶ 9 We must first decide whether those who apply for an appeal under A.R.S. § 41-1993(B) have an interest that implicates due process. We have no difficulty concluding that they do. All applicants, regardless of the merits of their claims, have a property interest in their right to use the statutorily established adjudicatory procedures. See Logan v. Zimmerman Brush Co. , 455 U.S. 422, 428-31, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (holding that party's right to use adjudicatory procedures of state employment practices act was a property interest for purposes of due-process analysis). Additionally, all applicants, however situated, have an often-acute financial interest in a benefit-eligibility determination. See Bd. of Regents of State Colls. v. Roth , 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (holding that person receiving social-welfare benefits under a statutory scheme has a property interest in continued receipt of the benefits); Kapps v. Wing , 404 F.3d 105, 115 (2d Cir. 2005) (holding that, though "the Supreme Court has repeatedly reserved decision on the question of whether applicants for benefits (in contradistinction to current recipients of benefits) possess a property interest protected by the Due Process Clause[, e]very circuit to address the question ... has concluded that applicants for benefits, no less than current benefits recipients, may possess a property interest in the receipt of public welfare entitlements").
¶ 10 We must next decide whether there was a deprivation of due process. The process due in a particular case depends on three factors: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews , 424 U.S. at 334-35, 96 S.Ct. 893.
¶ 11 The Department and pro bono counsel do not dispute that the third Mathews factor weighs in favor of finding a due-process violation and the second Mathews factor does not. We agree. The Department's failure to timely transmit the applications served no legitimate government interest, but neither did it create a risk of substantively erroneous judicial resolutions.
¶ 12 With respect to the first Mathews factor, we conclude that it weighs in favor of finding a deprivation of due process. As an initial matter, we acknowledge that we have, by separate orders of even date, denied on the merits all applications in the consolidated cases. Accordingly, the applicants in the consolidated cases have suffered less prejudice than applicants whose meritorious applications were delayed. See Goldberg v. Kelly , 397 U.S. 254, 264, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) ("[T]ermination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate."). We also acknowledge that though each of the consolidated cases were significantly delayed, the delay lengths were not identical, and "the possible length of wrongful deprivation of benefits" is "an important factor in assessing the impact of official action on the private interests." Mathews , 424 U.S. at 341, 96 S.Ct. 893 (citing Fusari v. Steinberg , 419 U.S. 379, 389, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975) ).
¶ 13 But each of the cases shares a common and compelling factor that tips the balance in favor of finding a deprivation of due process: the complete lack of justification for the Department employee's bad-faith conduct and the Department's failure to timely discover the malfeasance and ensure efficient adjudication of claims involving a vulnerable population. See Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev. , 959 F.2d 395, 405 (2d Cir. 1992) (observing that "no bright-line rule exists for determining when a delay is so burdensome as to become unconstitutional," and examining "whether these delays were egregious and without any rational justification"); see also *555 Littlefield v. Heckler , 824 F.2d 242, 247 (3d Cir. 1987) (in finding no violation of due process based on nine-month delay, noting "there is no allegation of bad faith, a dilatory attitude, or a lack of evenhandedness").
¶ 14 Weighing the totality of the circumstances, we hold that the delayed transmission of the applications for appeal uniformly deprived the applicants of procedural due process they were entitled to receive.
¶ 15 We must exercise our inherent authority to vindicate the constitutional deprivation. See Arpaio v. Baca , 217 Ariz. 570, 576, 579, ¶¶ 19, 28, 177 P.3d 312, 318, 321 (App. 2008) (holding that presiding criminal judge had inherent authority to schedule consolidated hearing to resolve urgent common ancillary issue of defendants' deprivation of constitutional right to communicate with counsel, and that courts are not only inherently authorized but obligated to provide relief for such deprivations). In so doing, we are mindful of the limitations on our authority. See id. at 577-78, ¶ 23, 177 P.3d at 319-20 (holding that inherent authority extended to consolidated cases only, and not to cases involving similarly affected parties not made part of the consolidating proceeding); Acker v. CSO Chevira , 188 Ariz. 252, 254-55, 934 P.2d 816, 818-19 (App. 1997) (defining inherent authority as "such powers as are necessary to the ordinary and efficient exercise of jurisdiction," and holding that exercise of the unwritten powers must be justified with particularity (citation omitted) ).
CONCLUSION
¶ 16 We order that in those of the consolidated cases involving overpayments-UB 17-0004, UB 17-0012, and UB 17-0013-the Department must exercise its discretion under A.R.S. § 23-787(G) to waive all overpayment interest attributable to Department delay. We note with approval that this is a measure that the Department avers it has already taken in all delayed cases with overpayments not involving fraud, and will take in all future such delayed cases.[2]
¶ 17 We further adopt the preventative orders set forth in In re Arizona Department of Economic Security , 2017 WL 4784584, at *10-11, ¶¶ 51-53, and A.O. 2017-03. We also order that the Department must, within 30 days of the date of this opinion, file with this court: (1) an updated report regarding the status of all investigations, whether internal or external, into the malfeasance and negligence that precipitated this opinion; and (2) updated copies of all training plans it has implemented to remediate those circumstances and prevent their recurrence, including copies of all training plans provided to customer service representatives. We further order that the Department has a continuing obligation to notify this court of any changes in the training plans or investigations (or of the institution of any new investigation). We also order that the Department must immediately cease any practice of purging record items relevant to applications for appeal, until such time as the Department may establish that its storage policies create no risk of prejudice to applicants.
¶ 18 Finally, we recognize that additional remedial measures-such as the waiver of overpayment principal under A.R.S. § 23-787(C) -may be appropriate in delayed cases when (unlike in these consolidated cases) the claimants prevail on appeal. To ensure that such claimants' rights are fully remediated, and to aid the court, we order that pro bono counsel shall be appointed in all pending and future cases in which we accept a Department-delayed application for appeal. This order applies to all pending cases in which we have accepted the application as of the date of this opinion, except that it does not apply to resolved cases and it does not apply if the court determines that the benefit of the appointment is outweighed by the delay that the appointment would cause in the resolution of a particular case.
¶ 19 The court today issues an administrative order that sets forth the obligations imposed in paragraphs 16 to 18 above.

The Department has never satisfactorily explained how ordinary supervisory audit and reporting controls failed to more timely reveal the employee's stunning dereliction.

According to the Department, it has and will exercise its discretion under A.R.S. § 23-787(G) to waive 25% of the interest accrued because of Department-caused delay in cases involving fraud.